## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

|  |  |
|---|---|
| **WaveCrest, Inc.** <br> **21366 Provincial Boulevard** <br> **Katy, TX 77450** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **U.S. Wind, Inc** <br> **1 N. Charles Street** <br> **Suite 2310** <br> **Baltimore, MD 21201** <br><br> SERVE ON: <br> The Corporation Trust, Inc. <br> 2405 York Road <br> Suite 201 <br> Lutherville-Timonium, MD 21093 <br><br> **AND** <br><br> **Renexia S.p.A** <br> **Viale Abruzzo 410** <br> **66100 Chiete (CH), Italy** <br><br> SERVE ON: <br> Renexia S.p.A <br> Viale Abruzzo 410 <br> 66100 Chiete (CH), Italy <br><br> **Defendants** | **CASE NO.:** _____ <br><br> **JURY TRIAL DEMANDED** <br><br> **FILED ELECTRONICALLY** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

The Plaintiff, WaveCrest, Inc., by and through its undersigned attorneys, hereby sues the

Defendants, U.S. Wind, Inc., and Renexia S.p.A, and as the basis thereof states as follows:

## PARTIES

1.      Plaintiff, WaveCrest, Inc. ("WaveCrest"), is a Texas corporation with its principal place of business in Texas.

2.      Defendant, U.S. Wind, Inc. ("U.S. Wind"), is a Massachusetts corporation with its principal place of business in Maryland.

3.      Defendant, Renexia S.p.A ("Renexia"), is an Italian publicly traded corporation with its principal place of business in Italy. Renexia, as the parent company of U.S. Wind, performs business in Maryland by and through its' subsidiary, U.S. Wind.

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Maryland has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different jurisdictions and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District and Defendants U.S. Wind and Rexenia (collectively "Defendants"), consented to venue in the State of Maryland pursuant to the forum selection clause in the contract identified herein.

## CONDITIONS PRECEDENT

3.      All conditions precedent to the commencement or maintenance of this lawsuit have occurred or have been waived by the actions of the Defendants.

4.      Plaintiff has performed all obligations under the Meteorological Tower Installation Services Agreement (hereafter, the "Prime Contract") entered into with Defendants that is the

subject of this lawsuit or such performance has been waived by Defendants' breach of its contractual obligations.

<h1 style="text-align:center">FACTS COMMON TO ALL COUNTS</h1>

**A. Background**

5.       On or about April 30, 2018, Plaintiff and Defendants executed and entered into the Prime Contract. Prime Contract, attached as *Exhibit 1*.

6.       The Prime Contract at Annex A called for Plaintiff to perform work in connection with the transportation, installation, and construction of certain meteorological towers (hereafter, the "Work") located off the coast of Maryland. *See Exhibit 1 at pages WC00044-WC00048.*

7.       Section 1.24 of the Prime Contract set forth a guaranty given by Renexia, as the parent company of U.S. Wind, to Plaintiff assuring Plaintiff of U.S. Wind's performance and satisfaction of U.S. Wind's obligations under the Prime Contract. *See Exhibit 1 at page WC00008.*

8.       Section 17.1 of the Prime Contract permitted Plaintiff to subcontract all parts of the Work that Plaintiff was obligated to perform under the Prime Contract.  *See Exhibit 1 at pages WC00033-WC00034.*

9.       In consideration for Plaintiff performing the Work of the Prime Contract, Defendants agreed in Section 5.1 of the Prime Contract to pay Plaintiff the total cost of the Prime Contract (hereafter, the "Price") on a direct cost plus 5.00% total markup arrangement, subject to a cap not to exceed three million six hundred thousand US Dollars ($3,600,000.00).  *See Exhibit 1 at page WC00019.*

10.       In Section 5.4 of the Prime Contract, Defendants agreed that should Defendants fail to pay Plaintiff in a timely manner; Plaintiff shall be entitled to interest on any such unpaid

amount(s) from thirty (30) days beyond the due date until receipt of payment at the rate of five percent (5.00%) per annum. *See Exhibit 1 at page WC00021.*

11.     In Section 5.5 of the Prime Contract, Defendants further agreed to pay Plaintiff twenty percent (20.00%) of the Price on June 15th, 2018; twenty percent (20.00%) of the Price by June 15th, 2018; twenty-five percent (25.00%) of the Price by June 25, 2018; twenty-five percent (25.00%) of the Price upon Meteorological Tower Installation; and all remaining Prime Contract Price at the demob, barge, tug, etc. *See Exhibit 1 at pages WC00021-WC00022.*

12.     In Section 19.1 of the Prime Contract, Defendants further agreed that, should Defendants fail to fulfill or perform any of its obligations as outlined in the Prime Contract, Defendants shall be obligated to pay Plaintiff all sums owed to Plaintiff through the effective date of the Prime Contract's termination, including, without limitation any and all costs to demobilize and relocate Plaintiff's personnel and equipment and any and all costs, expenses, and/or penalties that may be incurred by Plaintiff as the result of having to terminate any ongoing contracts maintained by Plaintiff with any of its subcontractors. *See Exhibit 1 at page WC00035.*

13.     In Section 5.5 of the Prime Contract, Defendants further agreed to pay Plaintiff a cancellation fee of five-hundred-thousand dollars ($500,000.00) should Plaintiff have to cancel the Prime Contract due to Defendants' breach. *See Exhibit 1 at page WC00022.*

B.  **Plaintiff's Performance**

14.     In reliance upon the terms of the Prime Contract and the agreement contained therein, Plaintiff began to perform immediately.

15.     On April 27, 2018, and May 27, 2018, respectively, Plaintiff engaged Keystone Engineering, Inc. (hereafter, "Keystone") to perform work under the Prime Contract in the amounts of five-thousand seven-hundred and fifty dollars ($5,750.00) and nine-thousand two-

hundred and fifty dollars ($9,750.00) respectively. *See* Purchase Orders dated April 27, 2018, and

May 27, 2018, respectively, attached as *Exhibit 2 at pages WC00054-WC00055*.

16.     On May 3, 2018, Plaintiff engaged AllCoast, LLC (hereafter, "AllCoast") seven-

hundred seventy-five thousand dollars ($750,000.00) to perform work under the Prime Contract.

*See* AllCoast Agreement dated May 3, 2018, attached as *Exhibit 3 at pages WC00056-WC00057*.

17.     Per the AllCoast Agreement, Plaintiff would incur a one-hundred fifty-thousand

dollars ($150,000.00) cancellation fee should Plaintiff cancel the AllCoast Agreement before July

1, 2018. Due to Defendants' breach of the Prime Contract, Plaintiff was forced to terminate the

AllCoast Agreement before July 1, 2018, and paid AllCoast the full amount owed for the

cancellation fee. *See* AllCoast invoice and payment, respectively, attached as *Exhibit 4 at pages*

*WC00058-WC00059*.

18.     On May 10, 2018, Plaintiff engaged Integrity Customs Brokerage, LLC (hereafter,

"Integrity") to perform work under the Prime Contract.  Plaintiff paid Integrity for the work under

separate invoices in the amount of six-thousand five-hundred forty-two dollars and seventy-nine

cents ($6,542.79) respectively. *See* agreement with Integrity and paid invoices dated May 10,

2018, June 29, 2018, and July 18, 2018, respectively, attached as *Exhibit 5 at pages WC00060-*

*WC00063*.

19.     On May 18, 2018, Plaintiff engaged MENCK GmbH (hereafter, "Menck" and the

"Menck Agreement") to perform work under the Prime Contract. *See* Menck Agreement, attached

as *Exhibit 6 at pages WC00064-WC00151*.

20.     Pursuant to the Menck Agreement, Plaintiff would incur a cancellation fee of four-

hundred eight-thousand and ninety dollars ($408,090.00) should Plaintiff be forced to cancel the

Menck Agreement in the four weeks leading up to July 5, 2018. Due to Defendants' breach of the

Prime Contract, Plaintiff canceled the Menck Agreement on June 29, 2018, and incurred the cancelation fee. *See* Section 2 ("Rental Period") (*Pages WC00069- WC00070)*, Section 9 ("Termination") (*Page WC00072)*, and Section 10 ("Invoicing and Payment Conditions) (*Pages WC00072-WC00073)*, attached as *Exhibit 6;* and Email from Plaintiff to *Menck* canceling the Menck Agreement, dated June 29, 2018, attached as *Exhibit 7 at page WC00152.*

21.     On June 4, 2018, Plaintiff engaged M & M Industrial, Inc. (hereafter, "M&M") to perform work under the Prime Contract.  The contract called for payment of fifteen-thousand U.S.D ($15,000.00) to M&M.  *See* M&M purchase order, attached as *Exhibit 8 at page WC00153.*

22.     On June 6, 2018, Plaintiff engaged Gray Barge Companies *(*hereafter, "Gray Barge") to perform work under the Prime Contract.  The contract called for payment of fifty-eight-thousand five-hundred dollars ($58,500.00) to Gray Barge.  *See* Gray Barge contract, attached as *Exhibit 9 at page WC00154*.

23.     On June 21, 2018, Plaintiff engaged Deep South Communications to perform work under the Prime Contract. The contract called for payment of ninety-three-thousand six-hundred thirty-five dollars ($93,635.00) to Deep South Communications.  *See* Deep South Communications contract, attached as *Exhibit 10 at page WC00155*.

24.     On June 21, 2018, Plaintiff engaged LAD Services of Louisiana, Inc. *(*hereafter, "LAD") to perform work under the Prime Contract. The contract called for payment of ninety-eight-thousand dollars ($98,000.00) to LAD.  *See* LAD contract, attached as *Exhibit 11 at page WC00156.*

25.     On June 29, 2018, Plaintiff engaged KD Oilfield Services Inc. (hereafter, "KD") to perform work under the Prime Contract. The contract called for payment of one-hundred thirty-three-thousand two-hundred one dollars ($133,201.00) in the event of cancelation.  Plaintiff was

forced to cancel the contract with KD when Defendants breached the contract.  Plaintiff paid KD the cancelation fee.  *See* KD invoice, attached as *Exhibit 12 at page WC00157- WC00158.*

### C.  Notification of the breach of the Prime Contract.

26.     On June 15, 2018, Defendants failed to make payment as outlined in the Prime Contract.  *See Exhibit 1 at page WC00021.*

27.     On June 19, 2018, Plaintiff informed Defendants that, pursuant to the terms outlined in the Prime Contract, payment was past due. Further, Plaintiff indicated that if Defendants failed to provide payment by July 9, 2018, Plaintiff would take all the necessary measures to enforce the Prime Contract. *See* Plaintiff's e-mail to Defendants, attached as *Exhibit 13 at page WC00159-WC00161.*

28.     On June 29, 2018, pursuant to Section 19.1 of the Prime Contract, Plaintiff invoked its right to terminate the Prime Contract based on Defendants' breach. *See* Termination Letter, attached as *Exhibit 14 at page WC00162- WC00163.*

## COUNT I – BREACH OF CONTRACT

29.     Plaintiff repeats and realleges each and every allegation in Paragraphs 1-27 as if fully set forth herein.

30.     In exchange for valid consideration, Defendants entered into the Prime Contract with Plaintiff that constitutes a valid and enforceable contract under Maryland State Law.

31.     Plaintiff has satisfied all of the conditions and covenants of the Prime Contract.

32.     Defendants breached the Prime Contract by failed to pay Plaintiff as required by the Prime Contract.

33.     Defendants has continued to breach the Prime Contract by failing to pay Plaintiff the amounts owed under the terms and conditions of the Prime Contract.  As a result of the breach and continuing breach, Plaintiff is entitled to interest as provided under the Prime Contract.

34.     Due to Defendants' breach of the Prime Contract, Plaintiff has incurred losses in excess of one million five hundred dollars ($1,500,000.00) in an amount to be proven at trial.

35.     By its failure to assure Plaintiff of U.S. Wind's performance and satisfaction of U.S. Wind's obligations under the Prime Contract, Renexia is in breach of its guaranty to Plaintiff pursuant to the terms and conditions of the Prime Contract.

36.     As a result of Defendants' breach, Plaintiff has suffered and will continue to suffer damage, including but not limited irreparable financial harm and damage to its reputation with its subcontractors.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants in excess of $75,000.00 and granting Plaintiff such other, and further relief as the justice of its case may require, including but not limited to, pre and post-judgment interests, attorneys' fees, and costs.

/S/ Paul M. Finamore
PAUL M. FINAMORE, ESQ. (#05992)
/S/ Spencer S. Pollock
SPENCER S. POLLOCK, ESQ. (#30209)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
(410) 783-6300
(410) 783-6363 facsimile
pmfinamore@nilesbarton.com
***Attorneys for Plaintiff***

**Of Counsel:**
Charles P. Dunkel, Jr., Esquire
Mills Shirley L.L.P.
3 Riverway
Suite 670
Houston, Texas 77056
Pro Hac Vice to be filed

4845-9231-0384, v. 1

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues.

/S/ Paul M. Finamore
PAUL M. FINAMORE, ESQ. (#05992)
/S/ Spencer S. Pollock
SPENCER S. POLLOCK, ESQ. (#30209)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400
Baltimore, Maryland 21202
(410) 783-6300
(410) 783-6363 facsimile
pmfinamore@nilesbarton.com
*Attorneys for Plaintiff*

**Of Counsel:**
Charles P. Dunkel, Jr., Esquire
Mills Shirley L.L.P.
3 Riverway
Suite 670
Houston, Texas 77056
Pro Hac Vice to be filed